IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MONICA FRANKLIN,                )
                                )
        Plaintiff,               )
                                )
    v.                           )       1:12CV329
                                )
SUNBRIDGE REGENCY – NORTH        )
CAROLINA, INC. d/b/a             )
WOODLAND HILL CARE &             )
REHABILITATION CENTER,           )
                                )
        Defendant.               )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Presently before this court is Defendant's Motion for Summary Judgment (Doc. 20). Defendant has filed a memorandum in support of her motion (Doc. 21), Plaintiff has filed a response in opposition (Doc. 22), and Defendant has filed its reply (Doc. 23). Defendant's motion is now ripe for adjudication, and for the reasons that follow, this court will grant the motion.

**I.   BACKGROUND**

Viewed in the light most favorable to Plaintiff, the evidence shows the following.

Monica Franklin ("Plaintiff"), an African American female, was continuously employed by Defendant as a certified nursing

assistant from 1996 until her termination on April 15, 2010. (Complaint ("Compl.") (Doc. 5) ¶ 5.)[1]  Defendant operates a facility in Asheboro, North Carolina, through which it provides long-term care and short-term rehabilitation care to its residents.  (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem."), Ex. B, Affidavit of Lesa Reeves ("Reeves Aff.") (Doc. 21-3) ¶ 6.)

On April 12, 2010, Plaintiff was preparing to do her rounds.  (See Compl. (Doc. 5) ¶ 8.)  She responded to a request for water from one of the residents.  (Def.'s Mem., Ex. A, Deposition of Monica Y. Franklin ("Franklin Dep.") (Doc. 21-2) at 25.)[2]  That resident suffered from several mental disorders and was routinely difficult to work with.  (Compl. (Doc. 5) ¶ 10.)  After the resident drank her water, Plaintiff said to her, "Let's change your diaper too."  (Franklin Dep. (Doc. 21-2) at 25.)  According to the Complaint, the resident never voiced opposition and actively helped Plaintiff change the resident's

---

[1] Plaintiff attested to the veracity of her Complaint before a notary public.  "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (emphasis omitted).

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-2-

diaper. (Compl. (Doc. 5) ¶ 15.) However, that description of events contradicts an interview record Plaintiff signed soon after the incident. The interview record is reproduced in substantial part below.

Soon after Plaintiff left the resident's room, Sherri Crowder, the nurse on duty, learned of the incident. (Def.'s Mem., Ex. C, Affidavit of Sherri Crowder ("Crowder Aff.") (Doc. 21-4) ¶ 9.) Ms. Crowder went into the resident's room and, after a period of time, returned and told Plaintiff that the resident had accused Plaintiff of hitting her. (Compl. (Doc. 5) ¶ 17.) Plaintiff told Ms. Crowder that she had not hit the resident and that the resident had told her that a "white boy" had hit her. (Id. ¶¶ 13, 18.) Ms. Crowder notified Judy Comp, Defendant's Director of Nursing, of the alleged incident. (Crowder Aff. (Doc. 21-4) ¶ 10; Def.'s Mem., Ex. D, Affidavit of Judy Comp ("Comp Aff.") (Doc. 21-5) ¶ 13.) Ms. Crowder also asked Plaintiff to prepare a written statement regarding her interaction with the resident. (Crowder Aff. (Doc. 21-4) ¶¶ 11-12.)

Ms. Comp conducted an investigatory interview of Plaintiff in Ms. Crowder's presence. (Id. ¶¶ 14, 17; Comp Aff. (Doc. 21-5) ¶ 14; Franklin Dep. (Doc. 21-2) at 27, 29.) As part of the investigatory process, Ms. Comp prepared an Event Investigation

-3-

Interview Record. (Comp Aff. (Doc. 21-5) ¶ 22.) She asked Plaintiff to review the record at the conclusion of the interview and to inform her if any part of the record was inaccurate. (Id. ¶ 23.) Plaintiff reviewed the record, indicated it was accurate, and signed the form. (Id. ¶ 24; see also Franklin Dep., Dep. Ex. 19 (Doc. 21-2) at 47 (Event Investigation Interview Record showing Plaintiff's signature).) That record presented the following version of events:

> [The resident] rang the bell for some water. I went to get it for her. I held the cup for her. When I put the cup down, I said OK let['s] change your diaper. She said no. I said come on now you need to be changed. When I touched her diaper, she said no. I said come on now you can't stay wet like that. I have to dry you. You can't stay wet. When I started to remove the diaper she swung at me. She came at me with her finger nails. I moved my head back. I said no, stop, stop being mean. I'm trying to help you. That's not nice. Stop being mean. I used the draw sheet to pull her over to change her. She was threatening me. I'm going to kill you. I'm going to knock you in the head. I'm going to get you. When I pushed her hand down, her hand hit her cheek. Every time she went to hit me, I'd push her hand down and tell her, no, stop, behave. When I pushed her hand down she said I hit her. I said no that was your own hand.

(Dep. Ex. 19 (Doc. 21-2) at 47.) During her deposition, Plaintiff reaffirmed that this record is an accurate statement of what she said during the investigatory interview. (Franklin Dep. (Doc. 21-2) at 30.) Ms. Comp informed Plaintiff that she was being suspended pending the results of Defendant's

-4-

investigation. (Comp. Aff. (21-5) ¶ 27; Franklin Dep. (Doc. 21-2) at 45.)

As part of the investigation, Defendant also interviewed the resident three times. (Comp. Aff. (21-5) ¶ 28.) In each of these interviews, the resident indicated that she had told Plaintiff "no" at least twice during the April 12 incident. (Id. ¶¶ 29-30.)

Ms. Comp terminated Plaintiff on April 15 because Defendant determined through its investigation that Plaintiff had violated the resident's rights by changing her diaper after the resident had refused that treatment at least twice. (Id. ¶ 32; Compl. (Doc. 5) ¶ 23.)

Defendant informs its employees of resident rights - including the right to refuse treatment - and sets forth those rights in its Code of Conduct. (Reeves Aff. (Doc. 21-3) ¶¶ 9-11.) Once Defendant receives an allegation of resident abuse, resident neglect, or a violation of resident rights, Defendant suspends the implicated employee pending the results of an internal investigation. (Id. ¶ 15.) The employee is terminated if Defendant substantiates the alleged misconduct through its investigation. (Id. ¶ 17.)

Plaintiff had been the subject of a number of disciplinary actions during her employment (Comp Aff. (Doc. 21-5) ¶ 42);

-5-

however, there is no evidence of any disciplinary action for the three years immediately preceding her termination. In June 2009, she received a positive performance evaluation.[3]

## II. LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial by "go[ing] beyond the pleadings" and introducing evidence that establishes "specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted).

In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether

---

[3] This court can find no evidence of this performance evaluation in the record. Plaintiff cites "Appendix A," but there are no exhibits attached to her Response. Because the evaluation does not affect this court's ultimate conclusion, this court will consider Plaintiff's representations as to this evaluation as part of the evidence.

-6-

there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The court must view the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor.  Id. at 255.  A mere factual dispute is insufficient to prevent summary judgment; the fact in question must be material, and the dispute must be genuine.  Fed. R. Civ. P. 56; Anderson, 477 U.S. at 247-48.  Material facts are those facts necessary to establish the elements of a party's cause of action.  Anderson, 477 U.S. at 248.  A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

**III. ANALYSIS**

The Complaint alleges claims of race discrimination in violation of Title VII and wrongful termination in violation of public policy against Defendant based on Plaintiff's termination.  Defendant has moved for summary judgment on both claims.  For the reasons that follow, Defendant's motion for summary judgment will be granted.

**(1) Title VII Race Discrimination**

Defendant first moves for summary judgment on Plaintiff's Title VII claim alleging race discrimination.  Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment

practice" to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Because Plaintiff has not presented any direct evidence of discrimination, she proceeds under the McDonnell Douglas burden-shifting framework. Under that framework, a plaintiff must first present a prima facie case. Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010). To establish a prima facie case of race discrimination in the enforcement of disciplinary measures under Title VII, a plaintiff must show that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for h[er] job and h[er] job performance was satisfactory; (3) [s]he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002). "If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc). If an employer does so, "the plaintiff then has an opportunity to

-8-

prove by a preponderance of the evidence that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'" Merritt, 601 F.3d at 294 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Turning to Plaintiff's prima facie case, it is undisputed that she is a member of a protected class and that she was terminated. The parties do dispute whether Plaintiff has presented sufficient evidence of the second and fourth elements, that is, that Plaintiff was performing satisfactorily and that non-African American employees had been retained under similar circumstances. For the reasons that follow, this court finds that Plaintiff has failed to establish a prima facie case of Title VII race discrimination by a preponderance of the evidence. See Burdine, 450 U.S. at 252-53 ("[T]he plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination."); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 515-16 (4th Cir. 2006).

Plaintiff contends that she was meeting Defendant's legitimate expectations because, although she had received write-ups in the past, her last performance evaluation, which was received in June 2009, was positive. A plaintiff must present evidence "upon which a reasonable fact finder could

-9-

determine that [s]he was meeting h[er] employer's legitimate expectations at the time of the adverse employment action." Jones v. Dole Food Co., 827 F. Supp. 2d 532, 547 (W.D.N.C. 2011) (internal quotation marks omitted), aff'd, 473 F. App'x 270 (4th Cir. 2012). Although a "satisfactory performance review may be used to show that an employee was meeting expectations," Pilger v. D.M. Bowman, Inc., 833 F. Supp. 2d 489, 495 (D. Md. 2011), aff'd, 2013 WL 2364593 (4th Cir. 2013), the time between that review and any adverse action may render the positive review insufficient to demonstrate a prima facie case, see id. (finding that a performance review was insufficient to establish this element when there was an eight-month period between the review and the plaintiff's termination).

Here, Plaintiff received her last review in June 2009 and she was terminated in April 2010. Thus, there were at least nine months between the review and her termination. The record Plaintiff signed also provides substantial evidence that Plaintiff did violate the resident's rights and Defendant's policies by changing the resident's diaper after that treatment had been refused at least twice. Accordingly, this court finds that Plaintiff has not presented sufficient evidence that she was meeting Defendant's legitimate expectations at the time she was terminated.

Plaintiff also contends that she has presented sufficient evidence that a Caucasian employee had been retained under similar circumstances. Although Plaintiff appears to have cited three individuals as potential comparators in the charge of discrimination she submitted to the Equal Employment Opportunity Commission, she relies on only one, Duston Underwood, in her Response. (See Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. (Doc. 22) at 5-6.) The only information in the summary judgment record regarding Mr. Underwood comes from the Affidavit of Judy Comp and statements made in Defendant's brief. On this record, this court finds that Plaintiff has not shown that Mr. Underwood may be used as a comparator in this case.

"The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008). The evidence shows that Duston Underwood is a Caucasian male formerly employed by Defendant on an as-needed basis. An allegation of abuse was lodged against him in May 2010. (Comp. Aff. (Doc. 21-5) ¶ 53.) Defendant investigated the incident but could not substantiate the allegation. (Id. ¶ 54.) Accordingly, Defendant did not take any corrective action against him. (Id. ¶ 55.) Defendant subsequently terminated Mr. Underwood because he was unavailable

-11-

for work on a later occasion.  (Id. ¶ 56.)  Here, although Defendant did not find that Plaintiff had abused the resident, it did substantiate that she had violated the resident's rights by providing treatment that had been refused.  Thus, this court finds that Plaintiff has not "clearly established" the similarity between herself and Mr. Underwood.

Even assuming that Plaintiff has established a prima facie case, this court finds that she has not rebutted the nondiscriminatory reason for her termination proffered by Defendant, that is, that Plaintiff was terminated for having violated a resident's rights.  The undisputed evidence shows that the apparent decisionmaker, Ms. Comp, had a statement signed by Plaintiff admitting that the resident had twice refused the treatment Plaintiff provided.  The resident had also consistently maintained through several interviews that Plaintiff had changed her diaper after the resident refused treatment.  Even if Plaintiff did not in fact violate the resident's rights, this court finds no evidence in the record from which a reasonable jury could conclude that Defendant terminated Plaintiff for any reason other than that it reasonably believed that she had done so. See Holland v. Wash. Homes, Inc., 487 F.3d 208, 220 (4th Cir. 2007) ("Whether Holland [engaged in the alleged misconduct] is irrelevant in this

-12-

context because it is uncontested that the decisionmaker believed that he did."); Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980) ("It is the perception of the decision maker which is relevant."); Crockett v. Eckerd Drugs of N.C., Inc., 615 F. Supp. 528, 532 (W.D.N.C. 1985) ("Defendant may not be held liable for a mistaken or wrong reason as long as the decision was not based on unlawful discrimination. Defendant need not show that its conclusion was correct.").

Based on the foregoing, this court will grant Defendant's motion for summary judgment as to Plaintiff's Title VII claim.

**(2) Wrongful Termination in Violation of Public Policy**

Plaintiff also alleges that her termination violated the public policy of North Carolina as articulated in the North Carolina Equal Employment Practices Act. See N.C. Gen. Stat. § 143-422.2 ("It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race . . . by employers which regularly employ 15 or more employees."). Defendant moves for summary judgment as to this claim.

"The Fourth Circuit Court of Appeals and the Middle District have consistently held that a plaintiff's failure to demonstrate his discrimination claim under Title VII will also

result in dismissal of a North Carolina wrongful-discharge claim arising out of the same facts and circumstances." Jones v. Southcorr, L.L.C., 324 F. Supp. 2d 765, 783 (M.D.N.C), aff'd, 117 F. App'x 291 (4th Cir. 2004) (citing Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995); Kimes v. Lab. Corp. of Am., Inc., 313 F. Supp. 2d 555, 561 n.4 (M.D.N.C. 2004)). Because this court has already found that Defendant is entitled to summary judgment on Plaintiff's Title VII claim, this court will also grant summary judgment as to the wrongful termination claim.

**IV. CONCLUSION**

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED**. A Judgment consistent with this opinion will be entered contemporaneously with this order.

This the 6th day of June, 2013.

_____
William L. Osteen, Jr.
United States District Judge